# The Attorney General's Role as Chief Litigator for the United States

[The following memorandum describes the development and present scope of the Attorney General's role in representing the United States and its agencies in litigation. It discusses the policy reasons for the centralization of litigation authority in the Department of Justice, and analyzes the Attorney General's relationship with client agencies. It also touches on the Attorney General's authority to settle and compromise cases, and on his authority over litigation in international courts. It concludes that, absent clear legislative directives to the contrary, the Attorney General has plenary authority and responsibility over all litigation to which the United States or one of its agencies is a party, and that his discretion is circumscribed only by the President's constitutional duty to "take Care that the Laws be faithfully executed."]

January 4, 1982

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

You have asked this Office to outline the role and responsibilities of the Attorney General in representing the United States in litigation in which the United States, or a federal agency or department, is a party. In particular, you asked that we consider the Attorney General's authority and responsibility to make decisions with respect to litigation, even if those decisions may conflict with the views, desires, or legal analyses of other departments or agencies of the United States, including those which may be "clients" in the particular litigation. Litigation involving agencies which have been granted express exclusive authority by Congress to conduct their own litigation is not within the scope of this memorandum.[1] Rather, the focus of this memorandum is litigation involving

---

[1] Circumstances in which the Attorney General lacks supervisory authority over litigation on behalf of the United States include (1) Litigation in United States courts where the Attorney General has no authority to determine who shall represent the United States, such as the United States Tax Court (26 U S.C. § 7452 specifies that the United States shall be represented by the Chief Counsel for the Internal Revenue Service or his delegate) and the United States Court of Military Appeals (10 U S C § 870 specifies that the United States shall be represented by the Judge Advocate General or his delegate); (2) Litigation involving independent regulatory agencies which have been given the express statutory authority to conduct their own litigation using agency attorneys, e g., the National Labor Relations Board (29 U S C § 154(a)); the Federal Power Commission (16 U.S.C. § 825m(c) power transferred to Federal Energy Regulatory Commission (42 U.S.C. § 7172(a)(2)(A) (Supp IV 1980)), the Interstate Commerce Commission (49 U.S.C. § 16(11) (Supp IV 1980)); and (3) Litigation involving Executive Branch agencies which have been granted independent litigating authority by Congress, e g , the Secretary of Labor is authorized to appoint attorneys to represent the Secretary or the Benefits Review Board in actions under the Longshoremen's and Harbor Workers' Compensation Act, except in the Supreme Court, under 33 U S.C. § 921a.

There are also circumstances in which certain agencies have assumed, notwithstanding their lack of express statutory authority, full responsibility for their own trial and appellate litigation, so far without objection from the Attorney General. These agencies, such as the Tennessee Valley Authority and the Federal Deposit Insurance Corporation, have not been required to submit to the Attorney General's supervisory authority, apparently for

Continued

47

those agencies whose litigating authority is clearly subject to the Attorney General's direction, or whose statutory grants of authority are ambiguous or insufficient to remove them from the Attorney General's supervision.

We conclude that, absent clear legislative directives to the contrary, the Attorney General has full plenary authority over all litigation, civil and criminal, to which the United States, its agencies, or departments, are parties. Such authority is rooted historically in our common law and tradition, *see Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458–59 (1868); *The Gray Jacket*, 72 U.S. (5 Wall.) 370 (1866) and, since 1870, has been given a statutory basis. *See* 5 U.S.C. § 3106, and 28 U.S.C. §§ 516, 519. *See generally United States* v. *San Jacinto Tin Co.*, 125 U.S. 273 (1888). The Attorney General's plenary authority is circumscribed only by the duty imposed on the President under Article II, § 3 of the Constitution to "take Care that the Laws be faithfully executed."

## I. Historical Development of the Role of the Attorney General

Plenary power over the legal affairs of the United States was vested in the Attorney General when the Office of the Attorney General of the United States was first created by the Judiciary Act of 1789. Act of September 24, 1789, ch. 20, § 35, 1 Stat. 92.[2]

The Attorney General's statutory authority to conduct litigation to which the United States, its departments, or agencies, is a party was more fully developed by Congress in 1870, in the same legislation that provided for the creation of the Department of Justice. Act of June 22, 1870, ch. 150, 16 Stat. 162. Prior to 1870, however, the Attorney General's authority in litigation matters involving the United States had been recognized by the Supreme Court. In *The Gray Jacket*, 72 U.S. (5 Wall.) 370 (1866), the Court held that no counsel would be heard for the United States in opposition to the views of the Attorney General. In the *Confiscation Cases*, 74 U.S. (7 Wall.) 454 (1868), the Court concluded that:

> Whether tested, therefore, by the requirements of the Judiciary
> Act, or by the usage of the government, or by the decisions of this

---

historical reasons, some of which relate to their financial independence as government corporations. *See* Daniel J Meador, Assistant Attorney General, Office for Improvements in the Administration of Justice, Draft Memorandum to the Attorney General and the Assistant Attorneys General Re: Government Relitigation Policies (May 21, 1979), Memorandum to the Attorney General from William D. Ruckelshaus (Mar 5, 1970) The operative statutes in these two cases, 16 U S C § 831c(h), 831x (TVA) and 12 U S C § 1817(g) (FDIC), merely give the agencies the authority to sue and be sued—not to litigate independently of the Department of Justice. Presumably, the Attorney General may reassert his supervisory authority at any time.

[2] Section 35 of the Judiciary Act provided in pertinent part that
> [T]here shall . . . be appointed a meet person, learned in the law, to act as attorney-general for the United States, who shall be sworn or affirmed to a faithful execution of his office; whose duty it shall be to prosecute and conduct all suits in the Supreme Court in which the United States shall be concerned, and to give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments.

"District attorneys," now known as "United States Attorneys," were to be appointed to conduct litigation in the lower courts of the United States but were not placed under the Attorney General's authority until 1861 Act of Aug. 2, 1861, ch 37, 12 Stat 285. From 1820 until 1861, the "district attorneys" were supervised by the Department of the Treasury. Act of May 15, 1820, ch 107, 3 Stat 592

> court, it is clear that all such suits, so far as the interests of the
> United States are concerned, are subject to the direction, and
> within the control of, the Attorney-General.

74 U.S. (7 Wall.) at 458–59.

The 1870 Act established the Department of Justice and designated the Attorney General as its chief legal officer. The Act provided that certain specified "solicitors" performing legal functions within the various agencies "shall be transferred from the Departments with which they are now associated to the Department of Justice, . . . and shall exercise their functions under the supervision and control of the head of the Department of Justice." (§ 3, 16 Stat. 162.)[3] The Act also authorized the Attorney General to designate any officer of the Department of Justice, including himself, to conduct and argue any case in which the government is interested, in any court of the United States, whenever he deems it necessary for the interest of the United States. (§ 5, 16 Stat. 162.) In addition, the Act gave the Attorney General supervisory authority over the conduct and proceedings of the various attorneys for the United States in the respective judicial districts, "and also of all other attorneys and counsel[l]ors employed in any cases or business in which the United States may be concerned." (§ 16, 16 Stat. 164.) And finally, the Act forbade the Secretaries of the Executive Departments to employ other attorneys or outside counsel at government expense, but "shall call upon the Department of Justice . . ., and no counsel or attorney fees shall hereafter be allowed to any person . . ., besides the respective district attorneys . . ., for services in such capacity to the United States, . . . unless hereafter authorized by law, and then only on the certificate of the Attorney-General that such services . . . could not be performed by the Attorney-General, . . . or the officers of the Department of Justice." (§ 17, 16 Stat. 164.) 16 Stat. 162.

The initial motivation for this legislation was the desire to centralize the conduct and supervision of all litigation in which the government was involved, as well as to eliminate the need for highly paid outside counsel when government-trained attorneys could perform the same function. Other objectives of the legislation that were advanced in the congressional debates were to ensure the presentation of uniform positions with respect to the laws of the United States ("a unity of decision, a unity of jurisprudence . . . in the executive law of the United States"),[4] and to provide the Attorney General with authority over lower court proceedings involving the United States, so that litigation would be better handled on appeal, and before the Supreme Court. *See* Cong. Globe, 41st Cong., 2d Sess., Pt. IV, 3035–39, 3065–66 (1870). *See generally* Bell, *The Attorney General: The Federal Government's Chief Lawyer and Chief Litigator, or One Among Many?*, 46 Fordham L. Rev. 1049 (1978); Key, *The Legal Work of the Federal Government*, 25 Va. L. Rev. 165 (1938).

---

[3] Prior to the Act, Congress had provided for the existence of "solicitors" in the various departments and agencies, who were responsible for the legal affairs of their respective departments *See generally* Key, *The Legal Work of the Federal Government*, 25 Va L Rev 165 (1938).

[4] Cong Globe, 41st Cong , 2d Sess , Pt IV, 3035, 3036 (1870)

The Supreme Court considered this legislation in *United States* v. *San Jacinto Tin Co.*, 125 U.S. 273 (1888) and concluded that the Attorney General was "undoubtedly the officer who has charge of the institution and conduct of the pleas of the United States, and of the litigation which is necessary to establish the rights of the government." *Id.* at 279. Emphasizing the centralizing function of the Department of Justice and the Attorney General, the Court reasoned that the power to control government litigation must lie somewhere—that there must exist some officer with authority to decide when the United States should sue, and to oversee the execution of such a decision—and that the Attorney General was designated such appropriate officer, in the Judiciary Act of 1789, by reference to the historical practice in England.[5] 125 U.S. at 278–80. In 1921, the Court added that the Attorney General's authority to conduct such litigation could be affected only by clear legislative direction to the contrary. *Kern River Co.* v. *United States*, 257 U.S. 147, 155 (1921). *See also* 21 Op. Att'y Gen. 195 (1895). (The Secretary of the Navy was not warranted in employing counsel in a foreign country to institute suit in behalf of the United States, but should have referred the matter to the Department of Justice, "which is charged with the duty of determining when the United States shall sue, for what it shall sue, and that such suits shall be brought in appropriate cases," *id.* at 198.)

Lower courts reached similar conclusions with respect to subsequent re-codifications of the 1870 legislation. The Court of Claims summarized the legislation in the following manner:

> These provisions are too comprehensive and too specific to leave any doubt that Congress intended to gather into the Department of Justice, under the supervision and control of the Attorney-General, all the litigation and all the law business in which the United States are interested, and which previously had been scattered among different public officers, departments, and branches of the Government, and to break up the practice of frequently employing unofficial attorneys in the public service.

*Perry* v. *United States*, 28 Ct. Cl. 483, 491 (1893). Speaking for the Second Circuit Court of Appeals, Judge Learned Hand emphasized the centralizing function of the Attorney General's role as chief litigator for the United States and the necessity that that role be committed exclusively to the Attorney General:

> The government has provided legal officers, presumably competent, charged with the duty of protecting its rights in its

---

[5] This reference is to the origin of the office of Attorney General, which was first created in the Judiciary Act of 1789, and derived its function from the role of the Attorney General in England. The Court stated.

> The judiciary act of 1789 . which first created the office of Attorney General, without any very accurate definition of his powers, in using the words that "there shall also be appointed a meet person, learned in the law, to act as Attorney General for the United States," 1 Stat. 93, c. 21, § 35, must have had reference to the similar office with the same designation existing under the English law. And though it has been said that there is no common law of the United States, it is still quite true that when acts of Congress use words which are familiar in the law of England, they are supposed to be used with reference to their meaning in that law.

125 U.S. at 280

courts. . . . Congress, having so provided for the prosecution of civil suits, can scarcely be supposed to have contemplated a possible duplication in legal personnel. The cost of this is one consideration, but far more important is the centering of responsibility for the conduct of public litigation. The Attorney General has powers of "general superintendence and direction" over district attorneys (title 5, U.S. Code, § 317 [5 USCA § 317]), and may directly intervene to "conduct and argue any case in any court of the United States" (title 5, U.S. Code, § 309 [5 USCA § 309]). . . . Thus he may displace district attorneys in their own suits, dismiss or compromise them, institute those which they decline to press. *No such system is capable of operation unless his powers are exclusive, or if the Departments may institute suits which he cannot control. His powers must be coextensive with his duties.*

*Sutherland* v. *International Insurance Co.*, 43 F.2d 969, 970 (2d Cir. 1930), *cert. denied,* 282 U.S. 890 (1930) (emphasis added).

In 1933, as part of a crusade to consolidate as much of the government's business as necessary to increase operating efficiency, President Roosevelt issued an executive order to supplement the existing legislative mandate of centralized litigation authority. Executive Order No. 6166 (June 10, 1933), which requires all claims by or against the United States to be litigated by, and under the supervision of, the Department of Justice, is still in effect. The order provides in pertinent part:

*Claims by or against the United States.*

The functions of prosecuting in the courts of the United States claims and demands by, and offenses against, the Government of the United States and of defending claims and demands against the Government, and of supervising the work of United States attorneys, marshals, and clerks in connection therewith, now exercised by any agency or officer, are transferred to the Department of Justice.

As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.

*Reprinted in* 5 U.S.C. § 901 note (1976).

## II. Present Statutory Bases of the Attorney General's Authority

These attempts to centralize the litigating function and authority of the federal government in the Department of Justice, with the Attorney General at its helm,

51

are now codified in 5 U.S.C. § 3106 and 28 U.S.C. §§ 515–516. Section 3106 of Title 5 forbids the employment of outside counsel by executive agencies for litigation involving the United States unless Congress has provided otherwise, requiring instead that the matter be referred to the Department of Justice.[6] Although we have found no case law interpreting this provision, the language of § 3106 appears to limit the prohibition of payment to outside counsel for litigation, and litigation-related matters. However, in view of the centralization and uniformity purposes underlying the 1870 Act and its progeny, we believe that, absent statutory authority to the contrary, the prohibition should be broadly interpreted to preclude payments to non-agency or non-Justice Department attorneys for (legal) advisory functions as well. *See* Scalia, Assistant Attorney General, Office of Legal Counsel, Letter to Hoffman, General Counsel, Department of Defense (Mar. 26, 1975).[7] *See also Boyle* v. *United States*, 309 F.2d 399, 402 (Ct. Cl. 1962) (quoting from a 1957 letter by the Comptroller General: "[I]n the absence of urgent and compelling reasons, a Government agency may not procure from an independent contractor services normally susceptible of being performed by Government employees."). Nevertheless, the Attorney General may employ outside counsel to perform legal duties under his direction. Sections 515 and 543 of Title 28[8] authorize the Attorney General to commission "special attorneys" to assist United States Attorneys, or to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct . . . ."

---

[6] 5 U S C § 3106 provides in pertinent part that.

> [e]xcept as otherwise authorized by law, the head of an Executive department or military department may not employ an attorney or counsel for the conduct of litigation in which the United States, an agency, or employee thereof is a party, or is interested, or for the securing of evidence therefor, but shall refer the matter to the Department of Justice.

[7] Although the Scalia letter was written in response to an inquiry regarding the use of outside counsel by an agency in connection with the investigation or prosecution of administrative claims, the principles expressed therein are broadly applicable

> In prohibiting the use of outside counsel by the several departments, Congress concentrated all the Government's law business in the Department of Justice—not only litigation, but also *advisory functions*. This was thought to be necessary in order to provide for uniform legal interpretations throughout the Executive branch . . . Congress later departed from the principle that *all* legal activities of the Government were to be carried out by the Department of Justice; subsequent legislation, authorizing and funding agency legal staffs, permitted legal matters not involving litigation to be handled in the various agencies. Those changes were taken into account when Congress, in 1966, codified the various provisions of the law going back to the Department of Justice Act of 1870. See, *e.g* , Historical and Revision Notes to 5 U.S.C 3106 and 28 U S C 516. There is, however, no indication of a Congressional intent to relax the prohibition against engagement of outside counsel by agencies other than the Department of Justice. This principle remains in effect with respect to both litigation reserved to the Department of Justice and nonlitigative matters handled within the several agencies.

Letter at 4-5 (footnotes and citations omitted) (emphasis added).

[8] 28 U.S.C. § 515(a), provides in pertinent part that.

> [t]he Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought

28 U.S.C. § 543 provides:

> (a) The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires
>
> (b) Each attorney appointed under this section is subject to removal by the Attorney General.

*Sections 515–519 of Title 28 codify the law growing out of the 1870 Act which* consolidated the power to conduct litigation involving the United States in the Department of Justice, and granted the Attorney General supervisory authority over such litigation. The principal provisions granting such authority are §§ 516 and 519. Section 516 provides that

> [e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

Section 519 provides that

> [e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

However, as with the previous legislative and executive efforts designed to centralize the litigating functions of the United States, these provisions have been undercut by exceptions authorized by Congress which grant agencies or departments litigating authority independent of the Department of Justice. *See* Bell, *The Attorney General: The Federal Government's Chief Lawyer and Chief Litigator, or One Among Many?*, 46 Fordham L. Rev. 1049 (1978); Memorandum to the Attorney General, from William D. Ruckelshaus (Mar. 5, 1970); Key, *The Legal Work of the Federal Government*, 25 Va. L. Rev. 165 (1938).[9] As of 1978, some 31 Executive Branch and independent agencies were authorized to conduct at least some of their own litigation. Bell, *supra*, at 1057. Although this memorandum does not address those cases in which agencies have been granted independent litigating authority, the lines between the Attorney General's authority and that which has been delegated to the agencies have at times been drawn ambiguously, and in those cases, the Attorney General frequently asserts his historic authority over the litigation proceedings.

---

[9] Congress has thus far maintained virtually unimpaired the Attorney General's control over the initiation of criminal proceedings *See, e.g*, 15 U S C. § 77t(b) (SEC), 16 U S C § 825m(a) (FPC). The preservation of such authority in the Attorney General is, we believe, sound constitutional policy, in view of the Executive's constitutional mandate to take care that the laws be executed faithfully. Such a responsibility carries with it the vindication of public rights through the institution of criminal proceedings against those who violate the laws which the Executive administers As the Executive's chief legal officer, the Attorney General is singularly suited to carry out this responsibility

Similarly, the Attorney General's authority to conduct cases in the Supreme Court has remained undiluted Section 518 of Title 28, which reserves the conduct and argument in the Supreme Court of suits and appeals "in which the United States is interested" to the Attorney General and Solicitor General, does not contemplate existing or future statutory authorizations to the agencies, as do §§ 516 and 519 However, § 518 does permit the Attorney General to "direct otherwise," in particular cases

# III. Supervisory Authority in the Context of
## Jointly Conducted Litigation

*A. Policy Considerations*

The policy considerations which support the centralization of federal litigating authority in the Department of Justice, under the supervision of the Attorney General, are many. In addition to the "unity of decision, unity of jurisprudence" goals that were articulated in the 1870 congressional debates, the centralization of authority and supervision over federal litigation in the Department of Justice meets several other objectives: (1) the coordination of lower court proceedings, which enhances the ability of government lawyers to select test cases presenting the government's positions in the best possible light; (2) the facilitation of presidential supervision, through the Attorney General, over Executive Branch policies that are implicated in litigation; (3) the allowance for greater objectivity in the filing and handling of cases by attorneys who are not themselves the affected litigants; and (4) the increased effectiveness in the handling of appeals and Supreme Court litigation which results from centralized control over lower court proceedings. *See generally* Memorandum to the Attorney General from William D. Ruckelshaus, Re: Encroachments upon the Authority of the Attorney General to Supervise and Control the Government's Litigation (Mar. 5, 1970). *See also* Harmon, Office of Legal Counsel, Memorandum for the Associate Attorney General (Dec. 11, 1980).

Centralization of federal litigating authority in the Department of Justice, under the supervision of the Attorney General, is vitally necessary to ensure the Attorney General's proper discharge of his duty to oversee the legal affairs of the United States with which Congress has entrusted him. Centralization ensures that the Attorney General is properly informed of the legal involvements of each of the agencies for which he is responsible; supervisory authority permits him to act on that knowledge. In this way, the Attorney General is better able to coordinate the legal involvements of each "client" agency with those of other "client" agencies, as well as with the broader legal interests of the United States overall. Yet, while the "client" agencies may be involved, to varying degrees, in carrying out the litigation responsibilities necessary to assist the Attorney General in representing the agency's particular interests, it is essential that the Attorney General *not* relinquish his supervisory authority over the agency's litigation functions, for the Attorney General alone is obligated to represent the broader interests of the Executive. It is this responsibility to ensure that the interests of the United States as a whole, as articulated by the Executive, are given a paramount position over potentially conflicting interests between subordinate segments of the government of the United States which uniquely justifies the role of the Attorney General as the chief litigator for the United States. Only the Attorney General has the overall perspective to perform this function.

Nevertheless, it must be stressed that in exercising supervisory authority over the conduct of agency litigation, the Attorney General will generally defer to the

policy judgments of the client agency. This deference reflects a recognition of the agency's considerable expertise in the substantive area with which it is primarily concerned. Strictly speaking, "policy" judgments are confined to those substantive areas in which the agency has developed a special expertise and in which the agency is vested by law with the flexibility and discretion to make policy judgments. However, it is increasingly the case that policy concerns are implicated in decisions dealing with litigation strategy, and in such cases, the Attorney General will accommodate the agency's policy judgments to the greatest extent possible without compromising the law, or broader national policy considerations.

It is in the context of these dual representation functions—in which there exists inherent potential for conflict between "clients"—that questions of representation arise. Circumstances frequently develop in which the Attorney General and client agencies disagree as to the proper course of the litigation—including strategy, legal judgments, settlement negotiations, and policy judgments which impact on the litigation. Such circumstances frequently present the question whether the Attorney General should continue to represent the client.

The simple answer is yes. The Attorney General has not only the statutory authority to represent the agencies over whose litigation he exercises supervisory authority, but, indeed, the *duty* to do so, "[e]xcept as otherwise authorized by law." 28 U.S.C. §§ 516, 519. The Attorney General's authority and duty to represent these agencies are described more particularly by the specific legislation which sets forth his and the agencies' respective litigation responsibilities, and occasionally, in "Memoranda of Understanding" entered into by the Attorney General and specific agencies apportioning such responsibilities. Nevertheless, unlike the private attorney, the Attorney General does not have the option of withdrawing altogether from the representation of client agencies, as long as interests of the United States for which he is held responsible are at stake.

However, recognition of the very real difficulties which are posed in the context of litigation jointly conducted by the Attorney General and "client" agencies—particularly in view of the agencies' greater staffing resources, more intimate familiarity with the subject matter of the litigation, greater visibility to the public as a litigant, and more involvement in the day-to-day administration of field offices—tends to suggest that a more practical understanding of the Attorney General's authority and duty to represent client agencies may be needed. Distinguishing policy judgments from legal judgments in litigation matters—the former being primarily the province of the agencies and the latter being reserved to the Attorney General—helps to provide not only a more reasonable and efficient use of government resources, but a workable framework for resolving most disputes that may result in representation crises. Nevertheless, because of his unique responsibilities in representing government-wide interests as well as those of particular "client" agencies, the final judgment concerning the best interests of the United States must be reserved to the Attorney General.

## B. Legislative Exceptions to the Attorney General's Authority

Although Congress has over the years responded, in varying degrees, to the multitude of pressures exerted by agencies seeking independent litigating au-

thority, the courts have continued to give greater weight to the strong policy objectives which recommend centralization. As a result, the "otherwise authorized by law" language creating the exception to the Attorney General's authority in 28 U.S.C. §§ 516 and 519 has been narrowly construed to permit litigation by agencies only when statutes explicitly provide for such authority. *See Marshall* v. *Gibson's Products, Inc.,* 584 F.2d 668, 676 n. 11 (5th Cir. 1978); *ICC* v. *Southern Railway,* 543 F.2d 534, 535–38 (5th Cir. 1976); *In re Grand Jury Subpoena of Persico,* 522 F.2d 41, 54 (2d Cir. 1975); *FTC* v. *Guignon,* 390 F.2d 323 (8th Cir. 1968); *United States* v. *Tonry,* 433 F. Supp. 620 (E.D. La. 1977).

Although the legislative history of Sections 516 and 519 is relatively sparse— in fact, the "history" is contained almost entirely in the "Historical and Revision Notes" prepared by the revisers of Title 5 in 1966—the courts' strict interpretation of these provisions is supported not only by the historical antecedents of these statutes and the policy considerations discussed above, but also by the Reviser's Notes to the 1966 amendments.[10] The revisers state, with respect to both Sections 516 and 519, that the sections were revised to express the effect of existing law, which does permit agency heads, *"with the approval of Congress,* [to employ] attorneys to advise them in the conduct of their official duties. . . ." 28 U.S.C. § 516 note (emphasis added). The revisers further state that "[t]he words 'Except as otherwise authorized by law,' are added to provide for existing and future exceptions (e.g., section 1037 of title 10)." § 516 note; 28 U.S.C. § 519 note. Thus the revisers have indicated that existing and future grants of litigating authority that are at least as express as the language contained in 10 U.S.C. § 1037 are to be excepted from the Attorney General's broad grant of authority under §§ 516 and 519 of Title 28. Section 1037 of Title 10 permits the Secretaries of the various military departments to "employ [private] counsel" for the "representation" of persons subject to the Uniform Code of Military Justice "before the judicial tribunals and administrative agencies" of foreign nations. While nothing in the legislative history of § 1037 indicates a congressional intent to create an exception to the predecessors of §§ 516 and 519, Congress made clear in 1966 that the operative language, "the Secretary concerned may employ counsel . . . incident to the representation before . . . judicial tribunals" was sufficient to trigger the exception.[11] *See* H.R. Rep. No. 1863, 84th Cong., 2d Sess. (1956); S. Rep. No. 2544, 84th Cong., 2d Sess. (1956). *See generally* Office of Legal Counsel, Memorandum to Peter R. Taft (Aug. 27, 1976).

In order to come within the "as otherwise authorized by law" exception to the Attorney General's authority articulated in 28 U.S.C. §§ 516 and 519, it is necessary that Congress use language authorizing agencies to employ outside

---

[10] 28 U S C §§ 515–526 (1976), Pub L. No. 89-554, § 4(c), 80 Stat 613 is the most recent codification of the provisions contained in the 1870 Act creating the Department of Justice Prior to 1966, these provisions were codified in Title 5

[11] 10 U S C § 1037 was adopted in 1956, prior to the 1966 adoption of 28 U S C §§ 516 and 519, and provides in pertinent part:

(a) Under regulations to be prescribed by him, the Secretary concerned may employ counsel, and pay counsel fees, court costs, bail, and other expenses incident to the representation, before the judicial tribunals and administrative agencies of any foreign nation, of persons subject to the Uniform Code of Military Justice.

counsel (or to use their own attorneys) to represent them in court. *See, e.g.*, 49 U.S.C. § 16(11) (Interstate Commerce Commission); 16 U.S.C. § 825m(c) (Federal Power Commission); 12 U.S.C. § 1464(d)(1) (Federal Home Loan Bank Board); 29 U.S.C. § 154(a) (National Labor Relations Board);[12] 5 U.S.C. § 7105(h) (Supp. IV 1980) (Federal Labor Relations Authority).[13] However, even agencies to which Congress *has* granted independent litigating authority may be prohibited from conducting their own litigation in the Supreme Court. *See, e.g.*, 42 U.S.C. § 2000e-4(b)(2) (Equal Employment Opportunity Commission); 5 U.S.C. § 7105(h) (Supp. IV 1980) (Federal Labor Relations Authority).[14] More ambiguous language, which, for example, authorizes an agency to "sue and be sued,"[15] "bring a civil action," or "invoke the aid of a court," has been considered by some courts to be insufficient to confer independent litigating authority. *See, e.g.*, *ICC* v. *Southern Railway*, 543 F.2d 534 (5th Cir. 1976); *FTC* v. *Guignon*,

---

[12] These statutes provide as follows

I C C —49 U.S C § 16(11)

The Commission *may employ such attorneys as it finds necessary* for proper legal aid and service of the Commission or for proper representation of the public interests in investigations made by it . or *to appear for or represent the Commission in any case in court.*

F P C —16 U S C § 825m(c)—language substantially similar to that provided for I C C

Federal Home Loan Bank Board—12 U.S.C. 1464(d)(1)

The Board shall have power to enforce this section and rules and regulations made hereunder In the enforcement of any provision of this section or rules and regulations made hereunder . *the Board is authorized to act* in its own name and *through its own attorneys* . .

National Labor Relations Board—29 U S.C. § 154(a)

*Attorneys appointed under this section may.* at the direction of the Board. *appear for and represent the Board in any case in court.*

(Emphases added ) Of course, these authorizations must be read within the context of the whole statutory scheme of which they are a part—in some instances these agencies are represented by the Department of Justice.

[13] Language similar to that contained in the statutes cited in n. 12, *supra* was recently held by the District Court for the District of Columbia to confer independent litigating authority on the Federal Labor Relations Authority (FLRA), including the litigation of proceedings under the Freedom of Information Act, 5 U S C. § 552 *See AFGE* v *Gordon*, C A No. 81-1737 (D D C Oct. 23. 1981) The statute construed by the court as granting the FLRA independent litigating authority, 5 U S C § 7105(h) (Supp IV 1980), provides·

Except as provided in section 518 of title 28, relating to litigation before the Supreme Court, *attorneys designated by the Authority may appear for the Authority and represent the Authority in any civil action* brought in connection with any function carried out by the Authority pursuant to this title or as otherwise authorized by law

The Appellate Section of the Civil Division has recommended that the Department of Justice not appeal this decision Nevertheless, the Department has maintained vigorously in the past, and will continue to maintain, that broad grants of independent litigating authority. similar to those discussed above, do not encompass cases arising under administrative statutes that apply government-wide This view is supported by the strong policy imperatives of "unity in the executive law of the United States," *infra* at 5, as well as some legislative history *See* H R Conf Rep No 539. 95th Cong . 1st Sess. 72 (1977). reporting on the Department of Energy Organization Act. Pub L No 95-91. 91 Stat 565. which established the Federal Energy Regulatory Commission

[14] 42 U S.C § 2000e-4(b)(2) provides

Attorneys appointed under this section may. at the direction of the Commission. appear for and represent the Commission in any case in court. *provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court pursuant to this subchapter.*

5 U S C § 7105(h) (Supp IV 1980) provides:

Except as provided in section 518 of title 28. relating to litigation before the Supreme Court. attorneys designated by the Authority may appear for the Authority and represent the Authority in any civil action brought in connection with any function carried out by the Authority pursuant to this title or as otherwise authorized by law

(Emphases added )

[15] The Office of Legal Counsel views "sue and be sued" language as merely designating the agency as a "jural entity" which may sue or be sued in its own name. and not as removing the agency's representation from the domain of the Department of Justice pursuant to 28 U S C §§ 516 and 519 *See* Meador. Draft Memorandum Re Government Relitigation Policies, *supra*. at 19, n 51. citing an interview with H Miles Foy III. Department of Justice. Office of Legal Counsel

390 F.2d 323 (8th Cir. 1968). *See generally* Harmon, Office of Legal Counsel, Memorandum for the Associate Attorney General (Dec. 11, 1980); Meador, Office for Improvements in the Administration of Justice, Draft Memorandum (May 21, 1979); Office of Legal Counsel, Relationship of Proposed Amendments to the Administrative Procedure Act . . . to the Department of Justice Policy of Opposition to Litigation Power Outside of the Department (Apr. 29, 1974); Memorandum to the Attorney General from William D. Ruckelshaus, *supra; but see SEC* v. *Robert Collier & Co.,* 76 F.2d 939 (2d Cir. 1935).

Other language which does grant agency attorneys authority to litigate, but provides that such authority shall be exercised under the direction and control of the Attorney General, provides the framework for "Memoranda of Understanding" (MOUs) between the agencies and the Department of Justice, which apportion the litigation responsibilities between the Department and the agencies. *See, e.g.,* 29 U.S.C. § 204(b) (Fair Labor Standards Act); the Age Discrimination Employment Act of 1967, Pub. L. No. 90-202, 81 Stat. 602.[16] These memoranda usually specify both the categories of cases in which agency counsel may appear and the nature of the Attorney General's continuing control and supervision over such cases. We believe that the sharing of litigation responsibilities under MOUs is proper, as long as the Attorney General retains ultimate authority over the litigation. Moveover, the rationale underlying these arrangements is an eminently sensible one. The efficiency and expertise objectives in government litigation are thereby maximized, without sacrificing the Attorney General's statutory role as chief government litigator, and the responsibilities and prerogatives which attach thereto.

Nevertheless, as a practical matter, MOUs do compromise the Attorney General's control, if not authority, over the conduct of agency litigation. Agencies eager to control their own litigation may proceed to negotiate settlement agreements, send out "no action" letters, depose witnesses, and otherwise represent the agency's position to the public without consultation or assistance from the Attorney General, leaving the Attorney General with a *fait accompli* and a potential equitable barrier to his subsequent assertion of control over the litigation.[17] Such occurrences effectively undermine the Attorney General's

[16] 29 U.S.C. § 204(b) permits Department of Labor attorneys to "appear for and represent" the Administrators of the FLSA and ADEA "in any litigation," but subjects all such litigation "to the direction and control of the Attorney General." The Secretary of Labor and the Attorney General have entered into a series of understandings which provide that Department of Labor attorneys will ordinarily handle all appellate litigation pursuant to the Acts, but permit the Attorney General to take part in the conduct of such cases as he deems to be in the best interest of the United States

[17] We do not mean to suggest that agencies acting beyond the scope of their litigating authority in settling claims *legally* bind the United States, rather, we refer only to the confusion, ill will, and lack of confidence that would accrue to the agency in its public relations should the Attorney General reverse the agency's actions, as well as the practical difficulties inherent in such a reversal *See Dresser Indus., Inc* v *United States,* 596 F.2d 1231, 1236 (5th Cir. 1979), *cert. denied,* 444 U S 1044 (1980):

> It is well established that the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority.
> . . . As the Supreme Court stated in [*Federal Crop Ins Corp* v *Merrill,* 332 U.S. 380 (1947)] Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power And this is so even though . the agent himself may have been unaware of the limitations upon his authority 332 U S at 384

ability to perform the dual litigating functions with which he is charged. Recognizing that the efficiency and expertise objectives in government litigation necessitate the sharing of litigation responsibilities in most cases, care should be taken to make explicit in these arrangements the Attorney General's overriding authority in directing the litigation. While the Attorney General may delegate some litigating authority under the MOUs, he may not delegate the ultimate responsibility which is by law vested exclusively in the Attorney General. *See* Harmon, Office of Legal Counsel, Memorandum for the Associate Attorney General (Dec. 11, 1980). Thus, the Attorney General should make clear to the client agency his willingness to support the Assistant Attorney General and line attorneys in the enforcement of his prerogatives under the MOU.[18]

## IV. Settlement and Compromise Authority

Included within this broad grant of plenary power over government litigation is the power to compromise and settle litigation over which the Attorney General exercises supervisory authority. This power "to compromise any case over which he has jurisdiction upon such terms as he may deem fit" is "in part inherent in [the Attorney General's] office and in part derived from statutes and decisions." 38 Op. Att'y Gen. 124 (1934). This authority was the subject of President Roosevelt's Executive Order No. 6166, (June 10, 1933), *reprinted in* 5 U.S.C. § 901 note (1976), which provided that ". . . the function of decision whether . . . to compromise . . . appeal . . . [or] abandon prosecution or defense, now exercised by any agency or officer [of the United States], is transferred to the Department of Justice." *See infra* at 7–8. With respect to the power to compromise, Attorney General Cummings observed that

> it is a power, whether attaching to the office or conferred by statute or Executive order, to be exercised with wise discretion and resorted to only to promote the Government's best interest or to prevent flagrant injustice, but that it is broad and plenary may be asserted with equal assurance, and it attaches, of course, immediately upon the receipt of a case in the Department of Justice, carrying with it both civil and criminal features, if both exist, and any other matter germane to the case which the Attorney General may find it necessary or proper to consider before he invokes the aid of the courts; nor does it end with the entry of judgment, but embraces execution (*United States* v. *Morris,* 10 Wheat. 246).

---

[18] Additional litigating authority, independent of the Attorney General, was granted to certain agencies by the Hobbs Act, 28 U S C §§ 2342, 2348 (1976 & Supp IV 1980). The Hobbs Act grants specified agencies authority to intervene in appellate proceedings "of their own motion and as of right," even though the Attorney General "is responsible for and has control of the interests of the Government" in the proceedings Notwithstanding the Attorney General's overall authority, he "may not dispose of or discontinue the proceeding" over the objection of the intervening agency, *and* the agency "may prosecute, defend, or continue the proceeding unaffected by the action or inaction of the Attorney General "

38 Op. Att'y Gen. 98, 102 (1934).[19] In these opinions, Attorney General Cummings concluded that the Attorney General's authority to settle cases extended even beyond that which would have been available to the agency charged with administering the underlying law.[20]

Executive Order No. 6166, together with Sections 516 and 519 of Title 28 of the U.S. Code (and their predecessor provisions), have been interpreted consistently by the courts to vest the Attorney General with virtually absolute discretion to determine whether to compromise or abandon claims made in litigation on behalf of the United States. *See New York* v. *New Jersey,* 256 U.S. 296, 308 (1921); *United States* v. *Newport News Shipbuilding & Dry Dock Co.,* 571 F.2d 1283 (4th Cir.), *cert. denied,* 439 U.S. 875 (1978); *Smith* v. *United States,* 375 F.2d 243 (5th Cir.), *cert. denied,* 389 U.S. 841 (1967); *Halbach* v. *Markham,* 106 F. Supp. 475, 479–81 (D.N.J. 1952), *aff'd,* 207 F.2d 503 (3d Cir. 1953). In deciding to settle or abandon a claim, or not to prosecute at all, the Attorney General is not restricted to considerations only of litigative probabilities, but rather may make a decision, in his discretion, on the basis of national policies espoused by the Executive. *Smith* v. *United States, supra.* The only limitations placed on the Attorney General's settlement authority are those which pertain to his litigating authority generally—*i.e.,* explicit statements by Congress circumscribing his settlement authority,[21] *see, e.g.,* 8 U.S.C. § 1329 (1976) (prohibiting settlement of suits and proceedings brought under Title II of the Immigration Act without consent of the court in which the suit or proceeding is pending), and the duty imposed on the President by Article II, § 3 of the Constitution to "take Care that the Laws be faithfully executed. . . ." *See generally* Office of Legal Counsel, Memorandum for Sanford Sagalkin (Sept. 4, 1980); Office of Legal Counsel, Memorandum to James W. Moorman (Oct. 30, 1979). To guide the Attorney General in the exercise of his settlement discretion, the 1934 opinions of Attorney General Cummings proposed a "promote the Government's best interest, or . . . prevent flagrant injustice" standard. *See* 38 Op. Att'y Gen. at 102.

---

[19] As early as 1831, Attorney General Taney observed that.

An attorney conducting a suit for a party has, in the absence of that party, a right to discontinue it whenever, in his judgment, the interest of his client requires it to be done If he abuses this power, he is liable to the client whom he injures.

An attorney of the United States, except in so far as his powers may be restrained by particular acts of Congress, has the same authority and control over the suits which he is conducting The public interest and the principles of justice require that he should have this power . . . [S]ince he cannot consult his client (the United States), the sanction of the court is regarded as sufficient evidence that he exercised the power honestly and discretely

2 Op. Att'y Gen 482, 486–87 Attorney General Cummings cited this opinion approvingly. 38 Op Att'y Gen at 99

[20] The opinions found in 38 Op Att'y Gen at 94, 98, 124 discuss the Attorney General's authority to compromise income tax cases in the absence of *bona fide* disputed questions of fact Attorney General Cummings concluded that he did possess the authority to settle such cases, even though the Secretary had no statutory authority to compromise income tax cases in those circumstances

[21] With respect to actions brought under the Federal Tort Claims Act, 28 U.S C §§ 2671–2680 (1976), for example, the Attorney General or his designee now has the authority to arbitrate, compromise, or settle claims brought under the Act after January 17, 1967, 28 U.S.C § 2677 (1976); prior to the 1966 amendments, court approval was required before the Attorney General was permitted to effect a settlement Congress also prescribed a procedure in the 1966 amendments which granted agencies authority to settle claims under $25,000 without prior written approval by the Attorney General of that specific settlement arrangement, as long as the arrangement was made in accordance with general regulations prescribed by the Attorney General 28 U S C. § 2672 (1976)

## V. Litigation in International Courts

Similarly, the Attorney General's authority over litigation involving the United States before the International Court of Justice (ICJ) is plenary. Although the Attorney General's supervisory authority has been challenged only once since the 1966 codification of the broad grant of authority contained in 28 U.S.C. §§ 516 and 519, that challenge was resolved by reference to the broad scope of the statutory provisions as well as Department of Justice regulations contained in Title 28 of the Code of Federal Regulations.

In the connection with the litigation between the United States and Iran in 1980, a dispute arose between the Department of State and the Department of Justice concerning the Attorney General's authority to represent the United States before the ICJ. The Legal Adviser expressed the view that the State Department, by virtue of its premier role in United States foreign policy and international relations, had been historically charged with the responsibility for international affairs involving the United States, including legal matters. In response, Attorney General Civiletti cited the unambiguous language of §§ 516 and 519, and noted the absence of both statutory law and formal opinions which would "otherwise authorize" the Department of State to conduct litigation independent of the Attorney General's supervision. Attorney General's letter to the Legal Adviser, Department of State (Apr. 21, 1980).[22] In addition, 28 C.F.R. § 0.46 (1980)[23] makes clear that the Attorney General's litigation authority is not limited to domestic matters, but rather includes litigation "in foreign courts, special proceedings, and similar civil matters not otherwise assigned." *See generally* D. Deener, The United States Attorneys General and International Law (1957).[24]

## VI. Conclusion

In short, the Attorney General, as the chief litigation officer for the United States, has broad plenary authority over all litigation in which the United States,

---

[22] At President Carter's request, Attorney General Civiletti personally conducted the Iran litigation before the ICJ, assisted by the Legal Adviser to the State Department, whom the Attorney General commissioned as a "Special Assistant," pursuant to 28 U S.C. § 515

[23] 28 C F R § 0 46 (1980) provides·

> The Assistant Attorney General in charge of the Civil Division shall, in addition to litigation coming within the scope of § 0.45, direct all other civil litigation including claims by or against the United States, its agencies or officers, in domestic or foreign courts, special proceedings, and similar civil matters not otherwise assigned, and shall employ foreign counsel to represent before foreign criminal courts, commissions or administrative agencies officials of the Department of Justice and all other law enforcement officers of the United States who are charged with violations of foreign law as a result of acts which they performed in the course and scope of their Government service

[24] Deener discusses the historical role of the Attorney General in providing legal advice on questions of international law and concludes·

> The Judiciary Act of 1789 did not specifically charge the Attorney General with the duty of giving legal advice on questions of international law On the other hand, the act did not restrict the "questions of law" that could be referred to the Attorney General to those involving domestic matters only Actually, almost from the very beginning, the President and the department heads submitted questions involving the law of nations to the chief law officer, and succeeding Presidents and cabinet officers have continued to submit such questions as a matter of established practice Congress apparently recognized this practical interpretation of the statutes defining the Attorney General's duties At any rate, Congress has never deemed it necessary to change the statutes in this respect.

Deener, *supra,* at 10–11 (footnotes omitted)

or its federal agencies or departments, are involved. This authority is widerang-ing, embracing all aspects of litigation, including subpoena enforcement, settle-ment authority, and prosecutorial discretion. The reservation of these powers to the Attorney General is grounded in our common law tradition, Acts of Congress (principally, 5 U.S.C. § 3106, and 28 U.S.C. §§ 516 and 519), various ex-ecutive orders, and a long line of Supreme Court precedent. These powers can be eroded only by other Acts of Congress, and the Executive's constitutional command to faithfully execute the laws.

Implicit in this broad grant of authority is the recognition that the Attorney General must serve the interests of the "client" agency as well as the broader interests of the United States as a whole in carrying out his professional duties. The Attorney General is obligated to administer and enforce the Constitution of the United States and the will of Congress as expressed in the public laws, as well as the more "private" legal interests of the "client" agency. It is because of this diversity of functions that situations may arise where the Attorney General is faced with conflicting demands, e.g., where a "client" agency desires to circum-vent the law, or dissociate itself from legal or policy judgments to which the Executive subscribes; where a "client" agency attempts to litigate against another agency or department of the federal government; or where a "client" agency desires a legal result that will benefit the narrow area of law administered by the agency, without regard to the broader interests of the United States government as a whole. In such cases, the Attorney General's obligation to represent and advocate the "client" agency's position must yield to a higher obligation to take care that the laws be executed faithfully. In every case, the Attorney General must satisfy himself that this constitutional duty, delegated from the Executive, has not been compromised in any way, and that the legal positions advocated by him do not adversely affect the interests of the United States.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*
