BichardsoN, Ch. J.,
delivered the opinion of the court:
The claimant was appointed one of the three citizens who, with the Chief Engineer of the Army and the Engineer Commissioner of the District of Columbia, were created a commission in relation to laying out, establishing, and maintaining Bock Creek Park, in the District of Columbia, under the Act of September 27,1890 ch. 1001 (26 Stat. L., 492), a copy of which is printed at the end of this opinion.
He is an attorney at law, and, in addition to the ordinary duties of the office of commissioner, he performed extensive professional services by employment, as it is alleged, and with the knowledge and consent of the Commission, for which he seeks compensation independently of the per diem allowance made by the act.
By the act of June 22, 1870 (ch. 150), Congress, created the Department of Justice, with the Attorney-Ceneral as its principal officer or head. It provided for a solicitor-general, three assistant attorneys-general, a solicitor of the Treasury, an assistant solicitor of the Treasury, a solicitor of internal revenue, a naval solicitor, an examiner of claims for the Department of State, and several clerks, one of whom was to act as “examiner of titles.” (B. S., secs. 340-351.)
Other provisions were made by the act, which, as reproduced in the Bevised Statutes, are as follows:
“ Sec. 355. No public money shall be expended upon any site or land purchased by the United States for the purpose of erecting thereon any armory, arsenal, fort, fortification, navy-yard, custom-house, light-house, or other public building, of any kind whatever, until the written opinion of the Attorney-Ceneral shall be had in favor of the validity of the title, nor until the consent of the legislature of the State in which the land or site may be to such purchase has been given.
“The district attorneys of the United States, upon the application of the Attorney-General, shall furnish any assistance or information in their power in relation to the titles of the public property lying within their respective districts.
*490 “And tbe Secretaries of the Departments, upon the appli-■catioii of the Attorney-General, shall procure any additional evidence of title which he may deem necessary, and which may not be in possession of the officers of the Government, and the expense of procuring it shall be paid out of the appropriations made for the contingencies of the Departments respectively.
“Sec. 359. Except when the Attorney-General in particular cases otherwise directs, the Attorney-General and Solicitor-General shall conduct aud argue suits and writs of error and •appeals in the Supreme Court and suits in the Court of Claims in which the United States is interested, and the Attorney-General may, whenever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor-General or any officer •of the Department of Justice to do so.
“ Sec. 360. The Attorney-General may require any solicitor or officer of the Department of Justice to perform any duty required of the Department or any officer thereof.
“Sec. 361. The officers of the Department of Justice, under the direction of the Attorney-General, shall give all opinions and render all services requiring the skill of persons learned in the law necessary to enable the President and heads of Departments, and the heads of bureaus and other officers in the Departments, to discharge their respective duties; and ■shall, on behalf of the United States, procure the proper evidence for, and conduct, prosecute, or defend all suits and proceedings in the Supreme Court and in the Court of Claims, in which the United States, or any officer thereof, as such officer, is a party or may be interested; and no fees shall be allowed nr paid to any other attorney or counselor at law for any service herein required of the officers of the Department of Justice, except in the cases provided -by section three hundred and sixty-three.
“ Sec. 362. The Attorney-General shall exercise general sup-intendence and direction over the attorneys and marshals of all the districts in the United States and the Territories as to the manner of discharging their respective duties; and the several district attorneys and marshals are required to report to the Attorney-General an account of their official proceedings, and of the state and condition of their respective offices, in such time and manner as the Attorney-General may direct.
“Sec. 363. The Attorney-General shall, whenever in his opinion the public interest requires it, employ and retain, in the name of the United States, such attorneys and counselors .at law as he may think necessary to assist the district attorneys in the discharge of their duties, and shall stipulate with .such assistant attorneys and counsel the amount of compensation, and shall have supervision of their conduct and proceedings.
*491 “ Sec. 364. Whenever tbe bead of a Department or burean gives tbe Attorney-General due notice that the interests of tbe United States require the service of counsel upon tbe examination of witnesses touching any claim, or upon tbe legal investigation of any claim, pending in such Department or bureau, tbe Attorney-General shall provide for such service.
“ Sec. 366. No compensation shall hereafter be allowed to any person, besides tbe respective district attorneys and assistant district attorneys for services as an attorney or counselor to tbe United States, or to any branch or Department of tbe Government thereof, except in cases specially authorized by law, and then only on tbe certificate of tbe Attorney-General that such services were actually rendered, and that tbe same could not be performed by the Attorney-General, or Solicitor-General, or the officers of tbe Department of Justice, or by tbe district attorneys.
“ Sec. 366. Every attorney or counselor who is specially retained, under tbe authority of tbe Department of Justice, to assist in tbe trial of any case in which the Government is interested, shall receive a commission from tbe bead of such Department, as a special assistant to tbe Attorn ey-General, or to some one of the district attorneys, as tbe nature of tbe appointment may require; and shall take tbe oath required by law to be taken by tbe district attorneys, and shall be subject to all liabilities imposed upon them by law.”
These provisions are too comprehensive and too specific to leave any doubt that Congress intended to gather into tbe Department of Justice, under tbe supervision and control of tbe Attorney-General, all tbe litigation and all tbe law business in which the United States are interested, and which previously bad been scattered among different public officers, departments, and branches of tbe Government, and to break up tbe practice of frequently employing unofficial attorneys in tbe public service. Tbe claimant could not have been employed to perform professional services in matters within tbe duties of tbe district attorney over which tbe Attorney-General bad supervision and control, except as provided in Bevised Statutes, sections 363 and 365, ante.
It was clearly within tbe official duties of tbe district attorney to prosecute cases for tbe judicial condemnation of tbe property taken by tbe commission and to perform all tbe professional law services connected therewith. .
Bevised Statutes provide as follows:
“Sec. 771. It shall be tbe duty of every district attorney to prosecute in bis district all delinquents for crimes and *492 offenses cognizable under the authority of the United States, and all cíyü actions in which the United States are concerned, and, unless otherwise instructed by the Secretary of the-Treasury, to appear in behalf of the defendants in all suits or proceedings pending in his district againt collectors, or other officers of the revenue, for any act done by them or for the recovery of any money exacted by or paid to such officers and by them paid into the Treasury.
‘•'Sec. 355. No public money shall be expended upon any site or land purchased by the United States for the purposes of erecting thereon any armory, arsenal, fort, fortification, navy-yard, custom-house, light-house, or other public building of any kind whatever, until the written opinion of the Attorney-General shall be had in favor of the validity of the title, nor until the consent of the legislature of the State in which the land or site may be, to such purchase, has been given.
“ The district attorneys of the United States, upon the application of the Attorney-General, shall furnish any assistance or information in their power in relation to the titles of the public property lying within their respective districts.
“And the secretaries of the Departments, upon the application of the Attorney-General, shall procure any additional evidence of title which he may deem necessary, and which may not be in the possession of the officers of the Government, and the expense of procuring it shall be paid out of the appropriations made for the contingencies of the Departments, respectively.”
The United States were concerned and deeply interested in the proceedings of the Commission. By section 5 all proceedings for condemnation of land were to be in their name. By section 3 the title to the land condemned was to be vested in the United States and by section 6 one-half of the appropriation of $1,200,000 for the property taken and the expenses of acquiring the same, and one-half of all future appropriations for the maintenance and the improvement of the land as a public park are made payable out of the Treasury of the United States. Thus the proceedings were brought directly within the duties of the district attorney and the Attorney-General.
The only way in which the claimant could have been legally employed in this business was in the manner prescribed by sections 363 and 365, ante. The first (363) authorizes the Attorney-General to employ “such attorneys and counsellors at law as he may think necessary to assist the district attorneys in the discharge of their duties and shall stipulate with such assistant attorneys and counsel the amount of compensation.” The second (365) prohibits the payment of compensation “to any *493 person besides tbe respective district attorneys and assistant district attorneys for services as an attorney or counsellor to tbe United States, or to any branch or Department of tbe Government thereof except in cases specially authorized by law, and then only on tbe certificate of tbe Attorney-General that such services were actually rendered and that tbe same could not be performed by tbe Attorney-General or Solicitor-General, or tbe officers of tbe Department of Justice or by tbe district attorneys.”
Tbe words ‘‘branch” and “department” are not used synonymously. Tbe latter refers to tbe Executive Departments recognized by tbe Constitution and regularly established by law, and tbe former to those parts of tbe Government which are created by statute as independent of any Department, such as tbe Government Printing Office, tbe Smithsonian Institution, and other organizations, among which must be included this Park Commission.
A commission' created by statute to take by condemnation or purchase a tract of land in tbe District of Columbia “dedicated and set apart as a public park or pleasure ground for tbe benefit of tbe people of tbe United States,” tbe cost and expense of establishing and of maintaining which is to be paid for, one-half by tbe Government, is certainly a branch of tbe Government.
Tbe claimant does not set up an employment by tbe Attorney-General under these statutes. On tbe contrary, be relies upon an oral opinion casually expressed by tbe Attorney-General in a conversation between him and tbe claimant on tbe subject, apparently as bis first impression, that his office bad nothing to do with tbe procedure under tbe act. It does not appear that a formal request was ever made to tbe Attorney-General for a deliberate and final opinion on tbe subject, nor that any such opinion was ever given to tbe Commission. It is doubtful whether tbe Attorney-General regarded bis remark to tbe claimant as an opinion by which the Department was to be governed. Later on we find him taking part in important proceedings under tbe act. He signed with tbe district attorney tbe petition to tbe Supreme Court of tbe District for condemnation of tbe land, and appeared before Mr. Justice Harlan to resist an application of parties for a writ of error and supersedeas to said court and argued tbe case before him.
*494 Tbe claimant refers to this oral opinion as justifying, in connection with certain parts of tbe act, bis employment by tbe Commission. Section 3 of tbe act provides that all proceedings under tbe act “ shall be in tbe name of tbe United States-of America and managed by tbe Commission.” Section 6, in tbe 12tb paragraph, appropriates, “to pay tbe expenses of inquiry, survey, assessment, cost of land taken, and all other necessary expenses incidental thereto, tbe sum of $1,200,000, or so much thereof as may be necessai'y.”
It is upon these provisions that tbe claimant relies for tbe commissioners’ authority to employ him professionally. T wenty thousau d dollars for professional ser vi ces can hardly be regarded as necessary expenses incidental to tbe “inquiry, survey, assessment, and cost of land taken.” This form of expression is not used to include such important and extensive expenditures for professional services as tbe amount here claimed.
Tbe management of tbe proceedings imposed upon tbe Commission by tbe last clause of section 5 does not necessarily include professional services of an attorney at law, but may be held to refer to tbe directing, carrying on, supervision, and guidance of tbe proceedings. If it extends to professional services, and one of tbe commissioners performs that service by resolution or otherwise, be only discharges bis duties under tbe act, for which by section 6 be is allowed $10 per day for each day of actual service.
Congress did not intend, we think, in such an indirect way,, to set aside for this Commission alone tbe emphatic and stringent provisions of existing statutes on tbe subject of the-employment of attorneys outside of tbe Department of Justice, and tbe prohibition against tbe allowance of extra compensation to persons so employed in any branch of tbe Government. Such construction would make tbe act, in this regard, present an extraordinary exception to tbe usual forms of Congressional expression.
No provision was made in tbe act for tbe employment of unofficial attorneys, apparently because Congress must have known of tbe statute obligations upon tbe Department of Justice, and its numerous officers.
We do not regard tbe resolution of April, 1891, set out in finding 4, under the circumstances, as employing tbe claimant beyond the duties of bis office as commissioner, nor that it was. *495 so intended. We bold it to be only an assignment of duties in tbeir distribution among tbe commissioners. Tbe claimant being tbe only lawyer'On tbe Commission it was natural that sucb duties should be assigned to bim in tbe regular course of tbe work of tbe Commission.
Moreover, tbe claimant is confronted by tbe prohibition of tbe following statute:
“(18) Sec. 1765. No officer in any branch of tbe public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for tbe disbursement of public money, or for any other service or duty whatever, unless tbe same is authorized by law, and tbe appropriation therefor explicitly states tbat it is for sucb additional pay, extra allowance, or compensation.
“(19) Act of 1874, June 20, c?i. 328, §3 (1 Supplement to B. S.T 2d ed.,p.l8).
“Sec. 3. Tbat no civil officer of tbe Government shall hereafter receive any compensation or perquisites, directly or indirectly, from tbe Treasury or property of tbe United States beyond bis salary or compensation allowed by law:
“ Provided, Tbat this shall not be construed to prevent tbe employment and payment by tbe Department of Justice of district attorneys as now allowed by law for tbe performance of services not covered by tbeir salaries or fees. ”
It can not be successfully controverted tbat as one of tbe Park Commissioners be was a civil officer of tbe Government, nor tbat be was sucb in “a branch of tbe public service” as we have before pointed out, that be is claiming compensation beyond bis salary or compensation allowed by law, and tbat there is no appropriation explicitly stating tbat it is for sucb additional pay or compensation as required by E. S., § 1765.
So far as tbe services of tbe claimant were not included in. bis duties as commissioner, tbe compensation demanded is extra and additional, and so far as they were part of sucb duties tbe compensation is fixed by the organic act.
We do not overlook tbe fact tbat at tbe time of tbe passage of tbe resolution of April, 1891, and while claimant was per-, forming tbe services for which be seeks extra compensation be was a member of tbe Commission, and as sucb participated in bis own employment. (Gilnan & Railroad Company vs. Kelley et al., 77 Illinois, 426.)
It makes no difference tbat tbe claimant has not accepted tbe per diem allowance. He accepted bis appointment under *496 the act and is bound by its terms, one of which fixes his compensation at $10 a day, and to that he will be entitled whenever he applies for it.
There is no doubt that the claimant faithfully performed extensive and valuable services for the defendants, but the court must hold that under the statutes such services as extra to those of the duties of a commissioner were not authorized and the payment therefor is prohibited. The claimant’s only remedy appears to be in Congress.
The petition is dismissed.
Nott, J., was not present at the trial of this case and took no part in the decision.
Copt op Act op September 27, 1890.
[Forming part of tlie preceding opinion.]
“Chap. 1001. — An act authorizing the establishing of a public park in the District of Columbia.
“ Be it enacted, &o., That a tract of land lying on both sides of Bock Creek, beginning at Klingle Ford Bridge, and running northwardly, following the course of said creek, of a width not less at any point than six hundred feet, nor more than twelve hundred feet, including the bed of the creek, of which not less than two hundred feet shall be on either side of said creek, south of Broad Branch road and Blagden Mill road, and of such greater width north of said roads as the commissioners designated in this act may select, shall be secured, as hereinafter set out, and be perpetually dedicated and set apart as a public park or pleasure ground for the benefit and enjoyment of the people of the United States, to be known by the name of Bock Creek Park: Provided, however, That the whole tract so to be selected and condemned under the provisions of this act shall not exceed two thousand acres nor the total cost thereof exceed the amount of money herein appropriated.
uSeo. 2. That the Chief of Engineers of the United States Army, the Engineer Commissioner of the District of Columbia, and three citizens to be appointed by the President, by and with the advice and consent of the Senate, be, and they are hereby, created a commission to select the land for said park, of the quantity and within the limits aforesaid, and to have the same surveyed by the assistant to the said.Engineer Commissioner of the District of Columbia in charge of public highways, which said assistant shall also act as executive officer to the said Commission.
“ Sec. 3. That the said Commission shall cause to be made an accurate map of said Bock Creek Park, showing the location, *497 quantity, and character of each parcel of private property to be taken for such purpose, with the names of the respective owners inscribed thereon, which map shall be filed and recorded in the public records of the District of Columbia.
“And from and after the date of filing said map the several tracts and parcels of land embraced in said Rock Creek Park shall be held as condemned for public uses, and the title thereof vested in the United States, subject to the payment of just compensation, to be determined by said Commission, and approved by the President of the United States:
“Provided, That such compensation be accepted by the owner or owners of the several parcels of land.
“That if the said Commission shall be unable by agreement with the respective owners to purchase all of the land so selected and condemned within thirty days after such condemnation, at the price approved by'the President of the United States, it shall, at the expiration of such period of thirty days, make application to the Supreme Court of the District of Columbia, by petition, at a general or special term, for an assessment of the value of such land as it has been unable to purchase.
“ Said petition shall contain a particular de>cription of the property selected and condemned, with the name of the owner or owners thereof, if known, and their residences, as far as the same may be ascertained, together with a copy of the recorded map of the park; and the said court is hereby authorized and required, upon such application, without delay, to notify the owners and occupants of the land, if known, by personal service, and if unknown, by service by publication, and to ascertain and assess the value of the land so selected and condemned, by appointing three competent and disinterested commissioners to appraise the value or values thereof, and to return the appraisement to the court; and when the value or values of such land are thus ascertained, and the President of-the United States shall decide the same to be reasonable, said value or values shall be paid to the owner or owners, and the United States shall be deemed to have a valid title to said land; and if in any case the owner or owners of any portion of said land shall refuse or neglect, after the appraisement of the cash value of said lands and improvements, to demand or receive the same from said court, upon depositing the appraised value in said court to the credit of such owner or owners, respectively, the fee simple shall in like manner be vested in the United States.
“Sec. 4. That said court may direct the time and manner in which possession of the property condemned shall be taken or delivered, and may, if necessary, enforce any order or issue any process for giving possession.
“Sec. 5. That no delay in making an assessment of compensation, or in taking possession, shall be occasioned by any *498 doubt wbicb may arise as to the ownership of the property, or any part thereof, or as to the interests of the respective owners. In such cases the court shall require a deposit of the money allowed as compensation for the whole property or the part in dispute. In all cases as soon as the said Commission shall have paid the compensation assessed, or secured its payment by a deposit of money under the order of the court, possession of the property may be taken. All proceedings hereunder shall be in the name of the United States of America and managed by the Commission.
“Sec. 6. That the Commission having ascertained the cost of the land, including expenses, shall assess such proportion of such cost and expenses upon the lands, lots, and blocks, situated in the District of Columbia specially benefited by reason of the location and improvement of said park, as nearly as may be, in proportion to the benefits resulting to such real estate.
“ If said commission shall find that the real estate in said District directly benefited by reason of the location of the park is not benefited to the full extent of the estimated cost aud expenses, then they shall assess each tract or parcel of land specially benefited to the extent of such benefits as they shall deem the said real estate specially benefited. The Commission shall give at least ten days’ notice, in one daily newspaper published in the city of Washington, of the time and place of their meeting for the purpose of making such assessment, and may adjourn from time to time till the same be completed. In making the assessment, the real estate benefited shall be assessed by the description as appears of record in the District on the day of the first meeting; but no error in description shall vitiate the assessment: Provided, That the premises are described with substantial accuracy. The Commission shall estimate the value of the different parcels of real estate benefited as aforesaid and the amount assessed against each tract or parcel, and enter all in an assessment book. All persons interested may ¡ appear and be heard.
“When the assessment shall be completed it shall be signed by the Commission or a majority (which majority shall have power always to act), and be filed in the office of the clerk of the Supreme Court of the District of Columbia.
“The Commission shall apply to the court for a confirmation of said assessment, giving at least ten days’ notice of the time thereof by publication in one daily newspaper published in the city of Washington, which notice shall state in general terms the subject and the object of the application.
“ The said court shall have power, after said notice shall have been duly given, to hear and determine all matters connected with said assessment; and may revise, correct, amend, and confirm said assessment, in whole or in part, or order a new assessment, in whole or in part, with or without farther *499 notice or on sneb notice as it shall prescribe; but no order for a new assessment in part, or any partial adverse action, shall binder or delay confirmation of the residue, or collection of the assessment thereon. Confirmation of any part of the assessment shall make the same a lien on the real estate assessed.
“The assessment, when confirmed, shall be divided into four equal installments, and may be paid by any party interested in full or in one, two, three, and four years, on or before which times all shall be payable, with six per centum annual interest on all deferred payments. All payments shall be made to the Treasurer of the United States, who shall keep the account as a separate fund. The orders of the court shall be conclusive evidence of the regularity of all previous proceedings necessary to the validity thereof, and of all matters recited in said orders. The clerk of said court shall keep a record of all proceedings in regard to said assessment and confirmation. The Commission shall furnish the said clerk with a duplicate of its assessment book, and in both shall be entered any change made or ordered by the court as to any real estate. Such book filed with the clerk when completed and certified shall be prima facie evidence of all facts recited therein. In case assessments are not paid as aforesaid, the said book of assessments certified by the clerk of the court shall be delivered to the officer charged by law with the duty of collecting delinquent taxes in the District of Columbia, who shall proceed to collect the same as delinquent real estate taxes are collected. No sale for any installment of assessment shall discharge the real estate from any subsequent installment; and proceedings for subsequent installments shall be as if no default had been made in prior ones.
“All money so collected may be paid by the Treasurer on the order of the Commission to any persons entitled thereto as compensation for land or services. Such order on the Treasurer shall be signed by a majority of the Commission and shall specify fully the purpose for which it is drawn. If the proceeds of assessment exceed the cost of the park the excess shall be used in its improvement, under the direction of the officers named in section eight, if such excess shall not exceed the amount of ten thousand dollars. If it shall exceed that amount that part above ten thousand dollars shall be refunded ratably. Public officers performing any duty hereunder shall be allowed such fees and compensation as they should be entitled to in like cases of collecting taxes.
“The civilian members of the Commission shall be allowed ten dollars per day each for each day of actual service.
“Deeds made to purchasers at sales for delinquent assessments hereunder shall be prima facie evidence of the right of the purchaser, and any one claiming under him, that the real *500 estate was subject to assessment and directly benefited, and that the assessment was regularly made; that the assessment was not paid; that due advertisement had been made; that the grantee in the deed was the purchaser or assignee of the purchaser, and that the sale was conducted legally.
“Any judgment for the sale of any real estate for unpaid assessments shall be conclusive evidence of its regularity and validity in all collateral proceedings except when the assessment was actually paid, and the judgment shall estop all persons from raising any objection thereto, or to any sale or deed based thereon, which existed at the date of its rendition, and could have been presented as a defense to the application for such judgment.
“To pay the expenses of inquiry, survey, assessment, cost of lands taken, and all other necessary expenses incidental thereto, the sum of one million two hundred thousand dollars, or so much thereof as may be necessary, is hereby appropriated out of any money in the Treasury not otherwise appropriated.
" Provided, That one-half of said sum of one million two hundred thousand dollars, or so much thereof as may be expended, shall be reimbursed to the Treasury of the United States out of the revenues of the District of Columbia, in four equal annual installments, with interest at the rate of three per centum per annum upon the deferred payments.
“ And provided further, That one-half of the sum which shall be annually appropriated and expended for the maintenance and improvement of said lands as a public park shall be charged against and paid out of the revenues of the District of Columbia, in the manner now provided by law in respect to other appropriations for the District of Columbia, and the other half shall be appropriated out of the Treasury of the United States.
“Sec. 7. That the public park authorized and established by this act shall be under the joint control of the Commissioners of the District of Columbia and the Chief of Engineers of the United States Army, whose duty it shall be, as soon as practicable, to lay out and prepare roadways and bridlepaths, to be used for driving and for horseback riding, respectively, and footways for pedestrians; and whose duty it shall also be to make and publish such regulations as they deem necessary or proper for the care and management of the same. Such regulations shall provide for the preservation from injury or spoliation of all timber, animals, or curiosities within said park, and their retention in their natural condition, as nearly as possible.
“September 27, 1890.