# Equal Employment Opportunity Commission Actions Against Public Employers to Enforce Settlement or Conciliation Agreements

The Equal Employment Opportunity Commission lacks the authority to initiate an action in federal court against a public employer to enforce a settlement or conciliation agreement negotiated by the EEOC during its administrative process.

September 8, 2003

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

This memorandum responds to your Office's request for our opinion regarding whether the Equal Employment Opportunity Commission ("EEOC") has the authority to initiate an action in federal court against a public employer to enforce a settlement or conciliation agreement negotiated by the EEOC during its administrative process. We examine the issue in light of the Attorney General's presumptively plenary authority over litigation on behalf of the United States, as well as the corollary principle that statutory exceptions to this authority are narrowly construed. We conclude that, because the relevant statutes do not clearly and unambiguously grant the EEOC authority to sue public employers to enforce settlement or conciliation agreements, any such actions must be brought by the Attorney General.

## I. Background

### A. The Attorney General's Litigating Authority

Any analysis concerning the litigating authority of an Executive Branch agency must begin with the presumption that the Attorney General retains "full plenary authority over all litigation, civil and criminal, to which the United States, its agencies, or departments, are parties." *The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47, 48 (1982) ("*Attorney General as Chief Litigator*"). This authority is rooted in common law and tradition, *see Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458–59 (1868); *The Gray Jacket*, 72 U.S. (5 Wall.) 370 (1866), as well as the constitutional grant of all executive power to the President and the duty of the President to "take Care that the Laws be faithfully executed," *see* U.S. Const. art. II, §§ 1, 3.

Enforcing the nation's laws through litigation is an unquestionably executive function. Because the President "alone and unaided could not execute the laws," he does so "by the assistance of" the Attorney General, over whom the President exerts "general administrative control." *Myers v. United States*, 272 U.S. 52, 117 & 161–64 (1926). Centralizing federal litigation authority facilitates presidential

152

management and supervision of the various policies of Executive Branch agencies and departments as they are implicated in litigation. Centralization also ensures coordination in the development of positions taken by the government in litigation and consideration of the impact of litigation on the government as a whole. Because of the Attorney General's government-wide perspective on matters affecting the conduct of litigation in the Executive Branch, he is uniquely suited to carry out these functions. *See United States v. San Jacinto Tin Co.*, 125 U.S. 273, 278–80 (1888); *Attorney General as Chief Litigator*, 6 Op. O.L.C. at 54–55.

Congress codified the Attorney General's preeminent role in litigation for the United States in 1870, when it first created the Department of Justice and placed the Attorney General at its head. *See* Act of June 22, 1870, ch. 150, 16 Stat. 162.[1] The current version of the relevant law reads:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefore, is reserved to the officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 516 (2000). Similarly, section 519 provides that "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party." 28 U.S.C. § 519 (2000).[2] In codifying the Attorney General's otherwise plenary litigating authority,

---

[1] By that legislation, "Congress intended to gather into the Department of Justice, under the supervision and control of the Attorney-General, all the litigation and all the law business in which the United States are interested, and which previously had been scattered among different public officers, departments, and branches of the Government . . . ." *Perry v. United States*, 28 Ct. Cl. 483, 491 (1893). Congress did so in several ways, including by providing that "solicitor[s]" from various department and agencies "shall be transferred from the Departments with which they are now associated to the Department of Justice; and . . . shall exercise their functions under the supervision and control of the head of the Department of Justice." Act of June 22, 1870, § 3, 16 Stat. at 162. Congress also granted the Attorney General supervisory authority over the U.S. Attorneys and over "all other attorneys and counselors employed in any cases or business in which the United States may be concerned." *Id.* § 16, 16 Stat. at 164. *See generally Attorney General as Chief Litigator*, 6 Op. O.L.C. at 48–51.

[2] Further centralizing the conduct of litigation on behalf of the United States, President Roosevelt issued Executive Order 6166, "the [p]urpose of section 5 of [which], among other things, was to transfer responsibility for the prosecution of criminal proceedings and suits by or against the United States in civil matters to the Department of Justice." *Sullivan v. United States*, 348 U.S. 170, 173 (1954). Section 5 of this Order, which remains in effect today, reads:

> *Claims By or Against the United States*
>
> The functions of prosecuting in the courts of the United States claims and demands by, and offenses against, the Government of the United States and of defending claims and demands against the Government, and of supervising the work of United States attorneys, marshals, and clerks in connection therewith, now exercised by any agency or officer, are transferred to the Department of Justice.

Congress did provide a limited exception where "otherwise authorized by law." 28 U.S.C. §§ 516, 519. Nevertheless, in light of the constitutional and policy considerations supporting centralized control of the federal government's litigation, only "a clear and unambiguous expression of the legislative will" suffices to establish an exception to the Attorney General's exclusive authority to litigate on behalf of the United States. *United States v. Morgan*, 222 U.S. 274, 282 (1911); *see also United States v. Hercules, Inc.*, 961 F.2d 796, 798–99 (8th Cir. 1992) ("The Supreme Court has indicated . . . that the statutory authority of the Attorney General to control litigation is not diminished without a clear and unambiguous directive from Congress.") (citations omitted); *Attorney General as Chief Litigator*, 6 Op. O.L.C. at 48 (The Attorney General retains "full plenary authority" over all litigation to which the United States is a party "absent clear legislative directives to the contrary."); *cf.* 28 U.S.C. § 1345 (2000) ("[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof *expressly authorized to sue by Act of Congress*.") (emphasis added).

Although admittedly the case law is not entirely uniform, courts have, consistent with this interpretive principle, repeatedly rejected claims that agencies, rather than the Attorney General, have the authority to pursue litigation, "in the absence of an express congressional directive." *Marshall v. Gibson's Prods., Inc.*, 584 F.2d 668, 676 n.11 (5th Cir. 1978) (holding that only the Attorney General, and not the Secretary of Labor, had authority to petition the court for an injunction to enforce its inspection authority); *see also FTC v. Guignon*, 390 F.2d 323 (8th Cir. 1968) (holding that only the Attorney General, and not the FTC, had power to seek court enforcement of FTC subpoenas because Congress had not "specific[ally] authoriz[ed]" it to do so); *United States v. Santee Sioux Tribe*, 135 F.3d 558, 562–63 (8th Cir. 1998) (holding that the Attorney General has the authority to enforce National Indian Gaming Commission orders because the relevant statute was silent on the issue). This Office has likewise rejected claims of independent litigation authority ungrounded in clear and unambiguous statutory text. *See, e.g.*, *Litigation Authority of the Equal Employment Opportunity Commission in Title VII Suits Against State and Local Governmental Entities*, 7 Op. O.L.C. 57, 59 (1983) ("*EEOC Litigation Authority Against State and Local Governments*") (concluding that the EEOC lacked authority to present its views in court independently of the Attorney General in litigation against public employers); *see generally Attorney General as Chief Litigator*, 6 Op. O.L.C. at 56 ("[T]he 'otherwise authorized by law' language creating the exception to the Attorney General's

---

> As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.

Exec. Order No. 6166 (1933), *reprinted in* 5 U.S.C. § 901 note (2000).

authority in 28 U.S.C. §§ 516 and 519 has been narrowly construed to permit litigation by agencies only when statutes explicitly provide for such authority.").

Furthermore, courts have construed statutory grants of independent litigating authority to confer such authority only with respect to the particular proceedings to which the statutory provision refers, and not as a broad authorization for the agency to conduct litigation in which it is interested generally. *See, e.g.*, *Marshall*, 584 F.2d at 672–76 (holding that congressional authorization to the Secretary of Labor to bring suit under certain circumstances would not be interpreted to authorize the Secretary to institute litigation to enforce investigatory orders); *ICC v. Southern Ry. Co.*, 543 F.2d 534, 536–39 (5th Cir. 1976), *aff'd*, 551 F.2d 95 (1977) (en banc) (holding that congressional authorization of the ICC to intervene in enforcement suits and to continue such suits "unaffected by the action or nonaction of the Attorney General" as well as grants to the district courts of jurisdiction over suits for injunctions "upon complaint of the Commission" did not vest the ICC with authority to institute actions for injunctions) (citations and quotations omitted). Once again, this Office has followed the same interpretive practice. *See, e.g.*, *Authority of the Equal Employment Opportunity Commission to Conduct Defensive Litigation*, 8 Op. O.L.C. 146, 156 (1984) ("*EEOC Defensive Litigation Authority*") (concluding that the congressional grant to the EEOC of authority to bring suits against private employers does not authorize it to conduct defensive litigation in suits brought "in connection with its federal sector administrative enforcement and adjudicative responsibilities, as well as in suits brought by its own employees challenging Commission personnel decisions").

### B. The EEOC's Litigating Authority

An examination of the EEOC's litigation authority begins with 42 U.S.C. § 2000e-4:[3]

> There shall be a General Counsel of the Commission appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel shall have responsibility for the conduct of litigation as provided in sections 2000e-5 and 2000e-6 of this title. The General Counsel shall have such other duties as the Commission may prescribe or as may be provided by law and shall concur with the Chairman of the Commission on the appointment and supervision of regional attorneys.

---

[3] Pursuant to these provisions, the EEOC enforces the substantive guarantees not only of Title VII but also of other fair employment legislation, including Title I of the Americans With Disabilities Act, 42 U.S.C. § 12112 (2000), under which the question addressed in this opinion arose.

42 U.S.C. § 2000e-4(b)(1) (2000) (emphasis added). Besides establishing the position of General Counsel, the statute also authorizes the appointment of additional attorneys to represent the Commission other than in the Supreme Court:

> Attorneys appointed under this section may, at the direction of the Commission, appear for and represent the Commission in any case in court, provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court pursuant to this subchapter.

*Id.* § 2000e-4(b)(2).

These provisions give the EEOC, through sections 2000e-5 and 2000e-6, the power to initiate certain actions. The EEOC may also intervene in certain suits brought by individuals:

> The Commission shall have power . . . to intervene in a civil action brought under section 2000e-5 of this title by an aggrieved party against a respondent other than a government, governmental agency or political subdivision.

*Id.* § 2000e-4(g)(6).

Section 2000e-5, referenced in sections 2000e-4(b)(1) and (g)(6), provides for the initiation of investigations and actions. Individuals may file a charge against their employers with the EEOC alleging an "unlawful employment practice." 42 U.S.C. § 2000e-5(a) & (b) (2000). Members of the EEOC may also file a charge. *Id.* § 2000e-5(b). The EEOC then notifies the employer of the charge and investigates the allegations to determine whether "there is reasonable cause to believe that the charge is true." *Id.* In cases in which a preliminary EEOC investigation reveals "that prompt judicial action is necessary to carry out the purposes of the Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge." *Id.* § 2000e-5(f)(2). Absent this need, the EEOC completes its investigation within 120 days. *Id.* § 2000e-5(b). If it finds no reasonable cause to credit the veracity of the allegations, it dismisses the charge. *Id.* If, on the other hand, the EEOC determines that there is such reasonable cause, it attempts to eliminate the unlawful practice "by informal methods of conference, conciliation, and persuasion." *Id.* The EEOC also encourages settlement prior to its reasonable cause determination. 29 C.F.R. § 1601.20 (2002). Agreements resolving the EEOC's concerns reached after a reasonable cause determination are called "conciliation agreements," while those reached prior to such a determination are generally

called "predetermination settlements." *See EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982); 42 U.S.C. § 2000e-5(b).[4]

If the EEOC does not reach an agreement with the employer, it may "bring a civil action against any respondent not a government, governmental agency, or political subdivision." 42 U.S.C. § 2000e-5(f)(1). In the case of public employers, however, "the Commission shall take no further action and refer the case to the Attorney General who may bring a civil action." *Id.* If the EEOC or the Attorney General chooses not to file suit, the aggrieved individual may bring a civil action against the employer. In cases brought by individuals, "the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action." *Id.* Finally, "[i]n any case in which an employer . . . fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order." *Id.* § 2000e-5(i).

Section 2000e-6, referenced in connection with the General Counsel's litigating authority under section 2000e-4(b)(1), authorizes the EEOC and the Attorney General to bring "pattern or practice" suits against employers. As originally enacted, section 2000e-6 authorized only the Attorney General to bring such suits. *See* 42 U.S.C. § 2000e-6(a) (2000). In 1972, Congress amended this section to transfer this function of the Attorney General to the EEOC two years after enactment "unless the President submits, and neither House of Congress vetoes, a reorganization plan." *Id.* § 2000e-6(c).[5] The President submitted such a plan in 1978, transferring back to the Attorney General the exclusive power to bring "pattern or practice" suits against state or local governments, or political subdivisions. President's Reorganization Plan No. 1, § 5, 43 Fed. Reg. 19,809, 92 Stat. 3781 (1978), *reprinted in* 42 U.S.C. § 2000e-4 note. Later that year, the President issued Executive Order 12068, implementing the reorganization plan. 3 C.F.R. 209 (1979). The EEOC retained the authority to litigate "pattern or practice" actions against private employers.

---

[4] One court has concluded that the EEOC's litigating authority turns on this temporal distinction. *See Pierce Packing*, 669 F.2d at 608 (distinguishing predetermination settlements from conciliation agreements and holding that the EEOC had no authority to sue to enforce predetermination settlements even against a private employer). Our analysis, however, applies equally to both predetermination settlements and conciliation agreements.

[5] Although the clause in section 2000e-6 purporting to give Congress the power to veto the President's reorganization plan is unconstitutional under *INS v. Chadha*, 462 U.S. 919 (1983), we have previously concluded that this provision is severable from the remainder of the act granting the President reorganization authority. *See EEOC Defensive Litigation Authority*, 8 Op. O.L.C. at 149 n.6.

## II. Analysis

### A. The EEOC's Authority to Enforce Settlement or Conciliation Agreements Against Public Employers

Your Office has asked us to examine the EEOC's authority to bring actions against public employers to enforce predetermination settlement or conciliation agreements negotiated by the EEOC during its administrative process. Because Congress has provided no clear and unambiguous directive authorizing the EEOC to bring such suits, we conclude that actions to enforce these agreements against public employers are exclusively the province of the Attorney General.

With one possible exception not relevant here,[6] sections 2000e-5 and 2000e-6 define the full scope of the EEOC's litigating authority. *See EEOC Litigation Authority Against State and Local Governments*, 7 Op. O.L.C. at 61–62; *EEOC Defensive Litigation Authority*, 8 Op. O.L.C. at 149–50. The grants of litigating authority in sections 2000e-4(b)(1) and (g)(6) expressly incorporate the limitations of sections 2000e-5 and 2000e-6. Furthermore, while section 2000e-4(b)(2) does not expressly refer to these provisions, we have previously concluded "that the limitations on the General Counsel's authority which are set forth in § 2000e-4(b)(1) necessarily are incorporated into the 'litigation authority' granted Commission attorneys in § 2000e-4(b)(2)," *EEOC Defensive Litigation Authority*, 8 Op. O.L.C. at 149. As we explained, a contrary reading, which "would grant Commission attorneys authority which supersedes that of the General Counsel, under whose supervision they work, pursuant to § 2000e-4(b)(1)," *id*. at 150, "would be contrary to congressional intent, the rule that exceptions to the Attorney General's plenary litigating authority are to be narrowly construed, and the plain language of the statute," *EEOC Litigation Authority Against State and Local Governments*, 7 Op. O.L.C. at 61–62 (footnote omitted).

Neither section 2000e-5 nor section 2000e-6 clearly and unambiguously vests the EEOC with authority to sue to enforce predetermination settlement or conciliation agreements. *See* 42 U.S.C. §§ 2000e-5 & 2000e-6. By contrast, these sections explicitly vest the EEOC with litigating authority in a variety of other circumstances. For instance, section 2000e-5(i) specifically grants the EEOC authority to initiate proceedings to enforce court orders issued in litigation brought under section 2000e-5, including, presumably, settlements entered by court order. *See id*.

---

[6] Section 2000e-9 provides that "[f]or the purpose of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 161 of title 29 shall apply." 42 U.S.C. § 2000e-9 (2000). Section 161, which sets forth the investigatory powers of the National Labor Relations Board, authorizes the Board to issue subpoenas, and provides, "[i]n case of contumacy or refusal to obey a subpoena," for judicial enforcement "upon application by the Board." 29 U.S.C. § 161(1) & (2) (2000). In light of these provisions, one court has concluded that the EEOC, like the NLRB, may seek court enforcement of its subpoenas. *See EEOC v. Ill. State Tollway Auth.*, 800 F.2d 656, 658 (7th Cir. 1986). We express no opinion on the correctness of this decision.

§ 2000e-5(i). Congress's express allocation of authority to bring such ancillary litigation in this context strongly weighs against finding an implicit grant of analogous authority in those provisions of the statute that authorize the EEOC to negotiate agreements during its administrative process. On the contrary, the reticulate statutory text and structure make clear that where Congress wanted to grant the EEOC independent litigating authority it did so explicitly, as is required for any law derogating from the Attorney General's power to litigate on behalf of the United States.

Furthermore, these statutory provisions nowhere specifically authorize the EEOC to bring an action against a public employer under any circumstance. On the contrary, all statutory references to litigation against public employers expressly reserve such actions to the Attorney General and, conversely, nearly every grant of litigating authority to the EEOC is explicitly limited to suits against private employers.[7] *See* 42 U.S.C. § 2000e-4(g)(6) ("The Commission shall have power . . . to intervene in a civil action brought under section 2000e-5 of this title by an aggrieved party against a respondent other than a government, governmental agency or political subdivision."); *id.* § 2000e-5(f)(1) (requiring that in the case of public employers, the EEOC "shall take no further action and shall refer the case to the Attorney General who may bring a civil action."); *id.* (authorizing intervention in case brought by an individual plaintiff by "the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision"); *id.* § 2000e-5(f)(2) (authorizing actions for preliminary injunctions by "the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision"); *id.* § 2000e-6 & President's Reorganization Plan No. 1, § 5 (authorizing only the Attorney General to pursue "pattern or practice" actions against government employers). In short, as we have previously concluded, "statutory analysis . . . demonstrates conclusively that the EEOC lacks authority to prosecute, intervene in, or otherwise appear in, public sector [antidiscrimination] litigation on its own behalf." *EEOC Litigation Authority Against State and Local Governments*, 7 Op. O.L.C. at 64; *see also Proposed Change in EEOC Regulations Concerning Right-to-Sue Notices for Public Sector Employees*, 23 Op. O.L.C. 224, 229 (1999) ("While carrying over to governmental cases the EEOC's administrative function in the initial processing of charges and its important role in seeking to obtain voluntary compliance through conciliation,

---

[7] Only one clear grant of litigation authority is not expressly so limited. *See* 42 U.S.C. § 2000e-5(i) (granting the EEOC the power to sue employers to enforce court orders). In addition, to the extent that 42 U.S.C. § 2000e-9 can be read as a grant of litigating authority, *see supra* note 6, it also is not expressly limited to private employers, and one court has upheld the EEOC's authority to sue public employers under this provision. *See Ill. State Tollway Auth.*, 800 F.2d at 660. Neither section 2000e-5(i) nor section 2000e-9 mentions suits against public employers, however, and we express no opinion as to whether these sections authorize such suits. In all events, neither provision authorizes the EEOC to sue a public employer to enforce a predetermination settlement or conciliation agreement.

Congress unequivocally conferred sole litigating authority in such cases on the Attorney General.").

Our conclusion is also consistent with the rationales underlying the presumption in favor of the Attorney General's control over all litigation, including consistency and coordination of government litigation positions. Enforcement of predetermination settlement or conciliation agreements is not merely a matter of straightforward contract interpretation and may implicate the meaning of the substantive provisions of antidiscrimination law. For instance, agreements have included promises by the employer that it will, in the future, act consistently with Title VII. *See, e.g.*, *EEOC v. Cleveland State Univ.*, 1982 U.S. Dist. LEXIS 11885, at *2 (N.D. Ohio Jan. 13).[8] Suits to enforce such agreements, like the action in *Cleveland State*, involve questions of whether the employer has conformed to the substantive requirements of federal antidiscrimination law.

## B. Cases Allowing EEOC Enforcement of Settlement or Conciliation Agreements

Although several courts have permitted the EEOC to bring actions to enforce predetermination settlement or conciliation agreements, their reported decisions have involved private employers and thus not confronted the EEOC's authority to enforce such agreements against state and local government entities.[9] *See, e.g.*, *EEOC v. Henry Beck Co.*, 729 F.2d 301 (4th Cir. 1984); *EEOC v. Safeway Stores, Inc.*, 714 F.2d 567 (5th Cir. 1983); *EEOC v. Liberty Trucking Co.*, 695 F.2d 1038 (7th Cir. 1982); *cf. EEOC v. Contour Chair Lounge Co.*, 596 F.2d 809 (8th Cir. 1979) (entertaining EEOC suit to enforce conciliation agreement without discussion). Whatever the merit of their holdings as to private employers,[10] we do not find these decisions helpful in determining whether the EEOC has authority to bring suit to enforce predetermination settlement or conciliation agreements against public employers given the pervasive and unequivocal distinction drawn by 42 U.S.C. § 2000e between suits against public and private employers.

---

[8] The agreement in that case read in part: "All hiring, promotion practices, and other terms and conditions of employment shall be maintained and conducted in a manner which does not discriminate on the basis of race, color, sex, religion or national origin in violation of Title VII of the Civil Rights Act of 1964 as amended." 1982 U.S. Dist. LEXIS 11885, at *2.

[9] The only opinions—both unpublished district court decisions—that do involve EEOC suits against public employers to enforce negotiated agreements reach conflicting results. The court that considered the issue of the EEOC's power to sue public employers dismissed the EEOC's action on the ground that the EEOC lacked such authority. *See EEOC v. State Univ. of N.Y., Upstate Medical Univ.*, No. 5:02-CV-0820 (NPM) (N.D.N.Y. Jan. 30, 2003). The other court did not consider the issue and allowed the action to proceed. *See Cleveland State*, 1982 U.S. Dist. LEXIS 11885, at *6–*8.

[10] Despite these decisions and the comparatively broad scope of the EEOC's authority to litigate against private employers, we note that no statutory provision specifically authorizes the EEOC to sue to enforce predetermination settlement or conciliation agreements even against private entities. Regardless, we do not here address the EEOC's authority to bring such actions.

These decisions, furthermore, have not considered the question of which part of the Executive Branch—the EEOC or the Attorney General—is authorized to sue to enforce predetermination settlement or conciliation agreements. Rather, they have held only that these agreements are judicially enforceable, *see Safeway Stores*, 714 F.2d at 574; *cf. Ruedlinger v. Jarrett*, 106 F.3d 212 (7th Cir. 1997) (allowing an individual to sue to enforce a settlement agreement against a private employer), and that suits to enforce them are within the jurisdiction of the federal courts because they are not merely contract actions but arise directly under Title VII, *see, e.g.*, *Henry Beck*, 729 F.2d at 305–06; *Safeway Stores*, 714 F.2d at 572; *Liberty Trucking*, 695 F.2d at 1044; *see also* 42 U.S.C. § 2000e-5(f)(3) ("Each United States district court . . . shall have jurisdiction of actions brought under this subchapter."). Because these decisions nowhere address the distinct and more specific question presented here, *see Marshall*, 584 F.2d at 676 ("[T]he issue is not whether the United States could initiate such a suit in the district court but whether the Secretary [of Labor] can."), it remains an "open one," *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994) (holding that the Federal Election Commission had no authority to litigate in the Supreme Court without the authorization of the Justice Department despite the fact that the agency had done so previously); *see also United States v. More*, 7 U.S. (3 Cranch) 159, 172 (1805) (Marshall, C.J.) ("[T]he Court does not consider itself as bound by" a "*sub silentio*" assumption of "jurisdiction.").

Finally, these decisions appear to be driven less by the text of section 2000e than by policy considerations, specifically a perceived need to provide a forum in which agreements can be enforced in order to effectuate the statute's emphasis on conciliation and voluntary resolution of discrimination complaints. *See Henry Beck*, 729 F.2d at 305–06 (stressing the importance of the EEOC's ability to "function as an efficient conciliator"); *Liberty Trucking*, 695 F.2d at 1043 ("This statutory scheme [emphasizing conciliation] will be undermined by a holding that the federal courts lack jurisdiction over suits seeking enforcement of conciliation agreements."); *Safeway Stores*, 714 F.2d at 573 ("If conciliation agreements were unenforceable, there is little question that this primary role of voluntary compliance would be undermined."). Of course, such concerns cannot override the constitutional and statutory presumption that the authority to litigate belongs to the Attorney General. *See, e.g.*, *NRA Political Victory Fund*, 513 U.S. at 95–96 (acknowledging the "sound policy reasons [that] may exist for providing the FEC with independent litigating authority in [the Supreme] Court" but holding that these considerations cannot override the lack of statutory language doing so). In all events, so long as the Attorney General may sue to enforce predetermination settlement and conciliation agreements, these practical concerns need not arise.

### III. Conclusion

We conclude that the EEOC lacks the authority to initiate an action in federal court against a public employer to enforce predetermination settlement or conciliation agreements reached by the EEOC during the administrative process. Our conclusion is compelled by the language of the statute authorizing the EEOC's enforcement activities, as well as the well-settled, constitutionally-grounded interpretive principle that, absent a specific and unambiguous directive to the contrary, the United States' litigating authority resides with the Attorney General.

HOWARD C. NIELSON, JR.
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
